El Pueblo, Demandante y Apelado, *v.* Cerecedo, Acusado y Apelante.

Apelación procedente de la Corte de Distrito de San Juan, Sección 2ª., en causa por venta de billetes de lotería.

No. 671.—Resuelto en junio 23, 1914.

Excepciones—Objeción a una Pregunta Sugestiva—Necesidad de Insertar en el Récord la Pregunta.—Cuando se objeta una pregunta por ser sugestiva, para que el Tribunal Supremo pueda resolver la excepción formulada

por haber sido desestimada dicha objeción, es necesario que se incluya en el récord la pregunta exacta que se alega ser sugestiva.

ERRORES QUE NO PERJUDICAN AL ACUSADO—ADMISIÓN DE PRUEBA PROVISIONAL-MENTE—ELIMINACIÓN DE DICHA PRUEBA.—Cuando en un juicio ante la corte sin jurado, el juez permite que la contestación objetada de un testigo quede en el récord con carácter provisional, si la parte que hizo la objeción no insistió posteriormente en que se eliminara del récord dicha contestación, y, además, prescindiendo de ella, el resto de la prueba es suficiente para establecer la culpabilidad del acusado, el error que pudiera haberse cometido por la corte no puede estimarse como perjudicial al acusado.

DERECHO CONSTITUCIONAL—PRUEBA OBTENIDA POR MEDIO DE UN MANDAMIENTO DE ALLANAMIENTO—OBJECIÓN TARDÍA.—Cuando se presenta prueba contra un acusado obtenida por medio de un mandamiento de allanamiento, sin que el acusado haya hecho objeción alguna contra dicho procedimiento hasta el acto de la vista, la objeción contra su admisión es tardía y no constituye error el admitir la prueba.

LOTERÍA—COMPRADOR DE BILLETES—CÓMPLICES.—De acuerdo con el artículo 293 del Código Penal, no es la compra sino la venta de billetes lo que constituye delito, y, por tanto, el comprador no es cómplice y su declaración es admisible contra el vendedor, sin necesidad de ser corroborada en la forma que exige el artículo 253 del Código de Enjuiciamiento Criminal.

ID.—BILLETES DE LOTERÍA COMO PRUEBA—EXISTENCIA DE LA LOTERÍA.—En una causa por venta de billetes de lotería, no es indispensable la presentación de los billetes vendidos, y cuando la prueba demuestra que lo que se vendió fueron billetes de lotería, esto por sí solo es prueba bastante de la existencia de la lotería.

Los hechos están expresados en la opinión.

Abogado del Pueblo: *Sr. Charles E. Foote, Fiscal.*

Abogados del acusado: *Sres. Travieso & Iriarte* y *Jacinto Texidor.*

EL JUEZ ASOCIADO SR. DEL TORO, emitió la opinión del tribunal.

El presente es un recurso de apelación interpuesto contra sentencia dictada por la Corte de Distrito de San Juan, Sección 2ª., por virtud de la cual el apelante Manuel Cerecedo fué condenado, por haber vendido billetes de lotería, a sufrir la pena de un mes de cárcel y a pagar las costas del proceso. La acusación, en lo pertinente, dice así:

"El citado Manuel Cerecedo allá en uno de los días del mes de agosto de 1913, en la ciudad de San Juan que forma parte del distrito judicial del mismo nombre, ilegal y voluntariamente vendió a Juan

Audinot determinado número de billetes de la lotería de Santo Domingo, por determinada cantidad de dinero. Este hecho es contrario a la ley para tal caso prevista y a la paz y dignidad de El Pueblo de Puerto Rico.''

Los errores especificados por el apelante en su alegato, son siete. Los estudiaremos y resolveremos en el orden en que han sido establecidos.

1. ''La defensa entiende que la corte cometió error en cuanto admitió al Pueblo preguntar a su testigo Juan Audinot en forma sugestiva, y mostrarle un documento que no era el citado por el testigo.''

La excepción tomada en relación con este primer error alegado, consta del récord así:

''Al presentar el Fiscal al testigo un documento, la defensa del acusado tomó excepción, por la forma especial de preguntar del Fiscal que sugería al testigo su contestación. El Fiscal había presentado al testigo un documento que no era el borderó del cual se hablaba, pues el testigo acababa de manifestar que había roto el borderó. La defensa tomó excepción por la forma de preguntar, unida a la presentación de un documento que no podía ser el borderó, según la afirmación del testigo.''

Como se ve, la excepción se tomó ''por la forma especial de preguntar el Fiscal que sugería al testigo su contestación'' y como la exacta pregunta formulada por el Fiscal no se ha incluído en el récord, no tenemos base para decir si fué o nó sugestiva.

2. ''Al declarar la testigo Hipólita Fuentes, esposa de Juan Andinot, hubo de manifestar que recibió un día un paquete para su esposo, y que remitía el paquete Cerecedo; que sabía que era Cerecedo el remitente del paquete porque así lo dijo la mujer que trajo el paquete (pág. 5 del récord). Tratándose de una prueba de referencia esta defensa se opuso a que la manifestación se consignara; pero la corte

permitió que quedara en el récord, hasta que se viera si se establecía la conexión de la portadora del paquete con el acusado. Y de la resolución de la corte se tomó excepción por la defensa.''

Como se ve, el juez permitió que la contestación escepcionada quedara en el récord sólo con carácter provisional, y hemos examinado la transcripción y de ella no consta que el acusado al terminar la prueba insistiera en que se borrara del récord.

Además, se trataba de un *misdemeanor* tramitado sin la intervención del jurado y la prueba practicada, como tendremos ocasión de ver más adelante, prescindiendo de la declaración de Hipólita Rivera en el extremo objetado, fué suficiente para establecer la culpabilidad del acusado. Bajo tales circunstancias, aun en el caso de que se hubiera cometido error, tal error no puede estimarse como perjudicial al acusado.

3. ''La defensa entiende que la corte incurrió en error al admitir como prueba del Pueblo, la orden de allanamiento y registro, que en la transcripción del récord aparece copiada.''

Hemos examinado la transcripción del récord y en ella no aparece copiada la orden de allanamiento. No tenemos base en tal virtud, para discutir y resolver la cuestión planteada por el apelante.

4. ''La corte, a nuestro juicio, cometió error al admitir como prueba un libro de cuentas, que según el testigo St. Elmo, fué por él encontrado en el registro que hizo en casa de Cerecedo Hermanos, y por el mismo St. Elmo recogido. Tal admisión se hizo con la excepción tomada por la defensa.''

La objeción específica formulada por la defensa es la de que la cuenta contenida en el libro de referencia y presentada como prueba es demasiado vaga sin que se haya demos-

trado que tenga relación alguna con el delito investigado. La cuenta es como sigue:

"JUAN AUDINOT,
"Empleado del Gobierno, San Sebastián 42.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 8 | 17 | 25 n 2.30 | | 57 | 50 | | |
| | | Efo. | 26 | | | | |
| | | | 4 | | | 43 | |
| | | | 13 | | | | |
| | | Balance, | | | | 14 | 50 |
| | | | | 57 | 50 | 57 | 50 |
| | | Resta, | | 14 | 50 | | |
| 9 | 7 | 25   25 | | ·57 | 50 | | |
| | | | | 72 | | | |
| | | | | 72 | | | |
| | 3 | Cta. pasada, | | | | | |

Antes de presentarse la cuenta como prueba, había declarado el testigo Audinot en la siguiente forma, según consta de las páginas 3 y 4 de la transcripción:

"Dijo ser vecino de San Juan, y conocer al acusado, a quien en el mes de agosto tomó veinte y cinco billetes, pagándoles a razón de dos dollars veinte y cinco centavos cada uno; que estuvo en casa de Cerecedo a pedirle que le vendiera veinte y cinco billetes y Cerecedo le dijo que le contestaría, y al llegar el testigo a su casa al otro día se encontró con un sobre que le había mandado con los billetes; que eso fué el 25 de agosto y que el testigo le llevó a casa de Cerecedo 46 y pico de pesos por los billetes; que para [el 7 de septiembre, el tomó treinta y cinco (?) más y fué personalmente a pagarlos y que antes de pagarle, recibió un borderó ,el cual rompió; que antes de pagarle, le manifestó que le había remitido los billetes de 7 de septiembre y que tenía que hacer la remesa por cable y él pedía que le fuera a llevar el dinero; que el borderó lo recibió los primeros días de septiembre. Preguntado por el Fiscal de lo que decía el recibo, dijo que el recibo lo había destruído y que decía que tenía que remitir el dinero por cable."

Si examinamos la cuenta. en relación con la declaración del testigo Audinot, llegaremos sin dificultad alguna a la conclusión de que la primera es la constancia escrita conservada de las dos ventas de billetes a que se refiere la segunda.

Sólo se notan pequeñas contradicciones en el precio de los billetes y en la suma abonada que no destruyen la anterior conclusión.

5. ''Fué, a nuestro entender, error de la corte, el admitir como prueba un libro copiador de cartas, que según el testigo St. Elmo fué por él encontrado en el registro que practicó en la casa de Cerecedo Hermanos. De ese libro se presentó como prueba un folio en el que aparece una nota firmada M, y dirigida a Juan Audinot, y cuya nota copiamos en la exposición del caso, que forma parte de esta apelación. Respecto a la admisión de tal prueba tomó esta parte su excepción.''

La nota, según aparece incluída en la transcripción, es como sigue:

''Sr. Don Juan Audinot, San Sebastián 42, septiembre 7. Saldo de su cuenta hasta la fecha $2.00.

''NOTA.—Es deber mío remesar por cable el importe total de cada serie y está Vd. en descubierto por la suma que figura en su cuenta, debiendo reintegrarla lo más pronto posible S. S. M.''

Si examinamos la nota en relación con la declaración de Audinot y tenemos en cuenta que dicha nota figura en un libro copiador encontrado en la casa comercial del acusado, tendremos que concluir que la nota está suficientemente relacionada con el delito investigado y pudo ser admitida como prueba.

6. ''Entiende esta defensa que la admisión, hecha por la corte, de los dos libros de cuentas y copiador, aun en el caso de que se hubiera probado que ellos pertenecían a Cerecedo, el acusado, fué error en perjuicio de los derechos esenciales del acusado.''

Argumentando este error, el apelante sostiene que la Corte de Distrito violó principios consagrados por las Enmiendas IV y V a la Constitución de los Estados Unidos de América. Sin embargo, hay una circunstancia que impide que este error pueda ser siquiera alegado y discutido en este caso.

Los libros se ocuparon por virtud de cierta orden de allanamiento librada por el Juez Municipal de San Juan, y el acusado nada objetó hasta el momento de celebrarse la vista. Tal momento no era el oportuno y la corte de distrito al admitir los documentos que según hemos visto se referían al delito investigado, no violó ningún principio constitucional, de acuerdo con la jurisprudencia que a continuación citamos.

"Admitiendo que los billetes de lotería y los efectos fueron ocupados ilegalmente, esto no constituye sin embargo un motivo legal de oposición a su admisión como prueba. Si la orden de allanamiento fué ilegal, o si el funcionario que la cumplimentó se excedió en sus atribuciones, la persona a petición de la cual fué librada dicha orden, o el funcionario sería responsable del perjuicio causado. Pero esta no es una buena razón para que sean excluídos como prueba los documentos ocupados si ellos eran pertinentes al caso, como indiscutiblemente lo fueron. En la presentación de documentos como prueba la corte no puede tomar en consideración la forma en que se obtuvieron, o sea, si fueron adquiridos legal o ilegalmente, ni constituyen ellos una alegación de carácter independiente del punto en discusión en la que pueda fundarse la resolución de dicha cuestión." *Com.* v. *Dana,* 2 Mete., 329. Wigmore sobre Evidencia, art. 2183. 35 Cyc. Searches and Seizures, 1271, 1272.

"El mismo principio se había establecido en el caso de *People* v. *Adams,* 176 N. Y., 351, contra cuya sentencia se interpuso apelación para ante esta corte, y en el que se resolvió que si los documentos ocupados además de los billetes de una especie de lotería eran prueba pertinente del caso, como así lo consideró la corte, eran admisibles como prueba en el juicio expresándose la Corte en la página 358, como sigue: 'El principio fundamental es claramente que cuando la corte está celebrando un juicio criminal, no tomará en consideración la forma en que los testigos han obtenido los documentos u otros objetos de uso personal, que son esenciales y que han sido debidamente ofrecidos como prueba.' Esta doctrina de tal modo establecida por la Corte de Apelaciones de New York y que ha sido aprobada por este Tribunal y según la cual en la vista de una causa criminal la corte no permitirá que se promueva una cuestión indirecta respecto al origen de pruebas que son pertinentes, ha sido sancionada por tantas decisiones de los Estados que sería imposible citar o hacer referencia a ellas en particular. Muchas de las mismas han sido

citadas en la nota del caso *State* v. *Turner,* 136 Am. St. Rep., 129, 135 *et seq.* Después de citar numerosos casos dice el editor: 'El principio en que se fundan todas estas resoluciones es claramente que cuando la corte se encuentra ocupada en la celebración de una causa criminal, no tendrá en consideración la forma o manera en que ha adquirido un testigo ciertos documentos u otros efectos objeto de prueba que son esenciales y que han sido debidamente presentados como prueba. *People* v. *Adams,* 176 N. Y., 351, 98 Am. St. Rep., 675; 68, N. E. 636; 63 L. R. A., 406. Este examen o investigación no forma parte necesariamente de la acción principal y ponerlo en práctica sería demorar el curso ordenado de una causa y considerar incidentalmente una cuestión que ha venido a interponerse en el curso de dicha causa y que es enteramente independiente de la misma.'' *Weeks* v. *United States,* 232 U. S., 383.

7. ''La corte erró al resolver la moción de la defensa para que se absolviera perentoriamente al acusado, por falta de prueba que sostuviera la acusación.''

La prueba practicada en este caso consistió en las declaraciones de Juan Audinot e Hipólita Fuentes, que ya hemos transcrito, y en las de Fernando J. Géigel, Juez Municipal de San Juan que libró la orden de allanamiento y que asistió al acto del registro, y Walter M. St. Elmo, Jefe del Bureau de Información de la Policía Insular que practicó el registro. Y, además, en los documentos transcritos al estudiar los errores Nos. 4 y 5.

La parte apelante sostiene que no puede condenarse al acusado basándose en el testimonio de Audinot, porque Audinot es un cómplice.

En el caso de *El Pueblo* v. *Vázquez,* 19 D. P. R., 1045, esta Corte Suprema estableció la siguiente doctrina:

''Como el artículo 293 del Código Penal sólo declara constitutivo de delito el hecho de la venta de billetes de lotería, pero no el de la compra de los mismos, el comprador no puede considerarse como cómplice del vendedor y por lo tanto su declaración en una causa contra el vendedor no necesita la corroboración que exige el artículo 253 del Código de Enjuiciamiento Criminal para las declaraciones de los cómplices en general.''

· Y haciendo aplicación de la anterior doctrina, debe resolverse la cuestión suscitada en contra del apelante.

Sostiene también la parte apelante que la prueba es insuficiente porque no se presentaron los billetes de lotería y porque no demuestra la existencia de la lotería.

En primer lugar diremos que aún en el caso de que los billetes constituyeran en efecto la mejor prueba, como se admitió la prueba secundaria sin objeción por parte del acusado, éste está impedido ahora de levantar la cuestión. Véase los casos de *El Pueblo* v. *de Jesús,* 18 D. P. R., 591, y *El Pueblo* v. *Vega,* 20 D. P. R., 298. Y en segundo lugar diremos que de acuerdo con las dos decisiones que citamos a continuación tomándolas del alegato del Fiscal, no es indispensable en casos de esta naturaleza la presentación de los billetes vendidos, y el hecho de que la prueba demuestre que lo que se vendió fueron billetes de la lotería de Santo Domingo, es por sí solo evidencia bastante de la existencia de dicha lotería:

"Se imputa en la acusación el hecho de haberse vendido a un tal Bill Murdock un billete de la lotería conocida por "Lotería de Louisiana, establecida en el Estado de Louisiana." El primer testigo describe el billete como uno de la 'Lotería de Louisiana.' El acusado lo describe como un billete de la 'Lotería del Estado de Luisiana.' El billete mismo no fué presentado como prueba. Si se admitiera que el uso de la palabra 'Estado' en relación con el billete era una cuestión esencial en la descripción y que había de ser probada, habría sin embargo prueba suficiente para sostener la convicción en este punto puesto que el primer testigo describe dicho billete en igual forma que ha sido alegada en la acusación." *Anderson* v. *State,* 39 S. W. Rep., 109.

"Hubo prueba suficiente en el caso que justificara la negativa de la moción de que había algunas personas que alegaban ser y se llamaban por el nombre de Compañía de Billetes del Estado de Louisiana y llevaban a cabo un negocio de lotería, pero fué enteramente inmaterial el hecho de que fueran ellas las mismas personas especificadas en esta ley, o que aquellas personas hubieran aceptado o no su carta fundacional. No dejaba por eso de ser una lotería en realidad y de estar comprendida en la prohibición del estatuto, ya hubiera sido legalmente constituída o ya fuera completamente ilegal;

bien sus sostenedores hubieran sido debidamente incorporados o no. Creemos verdaderamente que el enviar por correo una carta o circular respecto a una lotería en proyecto, que todavía no existe, es un hecho que estaría claramente comprendido en la letra y espíritu del estatuto, si era una carta o circular que favorecía o tenía por objeto alentar la organización y establecimiento de una lotería. No hubo, por tanto, razón para que la corte en este estado del pleito ordenara absolución del acusado, cuando los mismos documentos de cuya remisión por correo se le acusó, constituían *prima facie* prueba robusta sino concluyente de que se referían a una lotería que existía o que' había sido establecida. No había necesidad de haberse presentado ninguna otra prueba de la existencia de una lotería para justificar una convicción que no fueran los documentos y billetes que se incluyeron en el sobre." *U. S. v. Noelke*, 1 Fed. Rep., 424-440.

En resumen, pues, diremos que no pudiendo concluirse que se haya cometido ninguno de los errores alegados por el apelante en su alegato, y habiendo examinado además cuidadosamente la transcripción y encontrado que no existe error fundamental alguno en contra del acusado, procede la confirmación de la sentencia apelada.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf, Aldrey y Hutchison.