EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* ALBERTO CAPRILES CAMACHO y RAMÓN RAMÍREZ SEGARRA, acusados y apelantes.

Núm. 8582.—*Sometido:* Abril 23, 1941.   *Resuelto:* Abril 28, 1941.

*Andrés Ruiz, Jr.,* abogado del apelante Capriles; *Hon. Procurador General George A. Malcolm, R. A. Gómez, Fiscal del Tribunal Supremo* y *Luis Negrón Fernández, Fiscal Auxiliar,* abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del tribunal.

Alberto Capriles Camacho y Ramón Ramírez Segarra fueron convictos y sentenciados por la Corte Municipal de Mayagüez por infracción a la Ley núm. 25 de 17 julio de 1935 (Leg. Ext., pág. 153), conocida por la Ley de la Bolita o *Bolipool.* Apelaron para ante la corte de distrito y antes de que se señalase la vista del juicio, radicaron una moción en la que después de alegar que cierta evidencia que contra ellos se proponía presentar el Fiscal, consistente en dinero en efectivo, *tickets,* listas y otros artefactos de dicho juego, había sido ilegalmente obtenida a virtud de una orden de allanamiento viciada de nulidad, solicitaron que dicha evidencia les fuese devuelta y no se permitiese su presentación en el juicio. En una vista que se celebró al efecto, la corte inferior desestimó la moción y celebrado el juicio en fecha posterior, con la oposición de los acusados se admitió dicha evidencia, y habiendo sido éstos convictos, fueron sentenciados cada uno de ellos a pagar una multa de $200 o en su defecto a cumplir cuatro meses de cárcel.

Separadamente apelaron para ante este tribunal, pero habiéndose desestimado por abandono el recurso interpuesto por Ramírez, sólo queda en pie el establecido por Capriles, que ahora nos ocupa.

Señaló el apelante cinco errores, entre ellos el haberse admitido la evidencia ilegalmente obtenida y el de ser insuficiente la prueba para sostener la sentencia impuesta.

Como el Fiscal de este tribunal levanta en su alegato una cuestión de derecho que de ser sostenida simplificaría considerablemente la resolución del recurso, ya que no sería necesario entrar a considerar si la evidencia de que se queja el acusado fué indebidamente admitida, procederemos a considerarla en primer término.

■■ Según el fiscal, la moción para que se devuelva al acusado evidencia ilegalmente obtenida, debe presentarse al juez que expidió la orden de allanamiento. El fiscal resume así su proposición:

"Aplicando estas disposiciones de ley al presente caso (se refiere a los artículos 517 y 518 del Código de Enjuiciamiento Criminal), uno de infracción a la Ley de *bolita* (Ley Núm. 25, de julio 17, 1935), que es un *misdemeanor* originado en la *corte municipal,* y habiéndose librado la orden de registro por el propio juez municipal, debemos llegar a la conclusión de que si el acusado Alberto Capriles consideraba ilegal la orden de registro, debió dar los pasos que marcan los artículos 517 y 518, esto es, atacar o contradecir la orden tan pronto fué ejecutada y devuelta la misma, en ese procedimiento especial previo a, y separado de, la causa principal. Al no hacerlo así, no puede levantar objeción, y atacar dicha orden colateralmente en el presente caso contra él incoado, ni ofrecer prueba alguna sobre su moción de nulidad, pues dicho procedimiento debe seguirse tal como lo marca el estatuto, siendo el momento oportuno para ofrecer tal prueba, el que determina el artículo 517, ante el propio juez que expidió la orden." (Alegato, pág. 8.)

A continuación cita el fiscal el caso de *Meegan* v. *Tracy,* 220 App. Div. 600, 223 N.Y. Sup. 355, para sostener que la insuficiencia de la declaración jurada y demás documentos que sirvieron de base a la orden de allanamiento no puede atacarse colateralmente. Los artículos 517 y 518 del Código de Enjuiciamiento Criminal, invocados por el fiscal, literalmente dicen:

"Art. 517. Si los fundamentos sobre que se basara la orden de registro fueren objeto de controversia, el juez debe proceder a tomar

las declaraciones que con el asunto se relacionen, poniéndose por escrito las .deposiciones de cada testigo.

"Art. 518. Si resultare que la prenda o prendas incautadas no· son las mismas que se describen en la orden de registro o allanamiento, o que no hay causas justificadas para creer en ·la existencia de los fundamentos sobre que se basara dicha orden, el juez de paz debe ordenar la restitución de las prendas a la persona de quien fueren incautadas.''

Conviene aclarar que aunque dichos artículos· se refieren al juez de paz, la autoridad en ellos conferida a dicho funcionario debe entenderse extensiva a los jueces municipales, toda vez que al crearse con posterioridad al Código de Enjuiciamiento Criminal el cargo de juez municipal, se le confirió la jurisdicción que tenían los jueces de paz.

Los artículos citados por el fiscal no obligan necesariamente al perjudicado por la orden de allanamiento a recurrir en primer término al juez municipal para que ordene la devolución de los efectos ilegalmente ocupados. Es más, la facultad de devolver dichos efectos cuando se intenta presentarlos en evidencia contra el acusado, sólo existe en dicho funcionario en aquellos casos en que el delito en relación· con el cual puede usarse la evidencia sea de su jurisdicción, pues conforme dispone el artículo 514 del citado Código:

". . .· si la prenda ha sido incautada en virtud de una orden de registro o allanamiento librada en vista de los fundamentos que se señalan en los números 2 y 3 del artículo 502, *debe conservarla en su poder, sujeta a la orden del tribunal a quien deba él enviar el proceso por él incoado, o a la de cualquier otro tribunal en que puede ser juzgado el delito' con que se relaciona la prenda incautada.*" (Bastardillas nuestras.)

Si el juicio, como en este caso, debía verse ante el juez municipal·que libró la orden de allanamiento, los acusados pudieron solicitar del juez la devolución de los efectos antes de su celebración. No solicitándolo en esa oportunidad, no podían atacar colateralmente la validez de la orden de allanamiento dentro del juicio *que había de celebrarse en dicha*

*corte municipal;* pero esto no impedía que apelado el caso para ante la corte de distrito—tóda vez que allí se celebra un juicio *de novo*—pudieran los acusados, mediante moción al efecto, radicada con antelación al día señalado para el juicio, como se hizo en este caso, impugnar la validez de la orden de allanamiento, solicitar que los efectos ilegalmente ocupados les fuesen devueltos y que no se permitiese su presentación en evidencia. No debemos perder de vista que en las apelaciones para ante las cortes de distrito contra sentencias dictadas por las cortes municipales y de paz en casos criminales, no se revisan, como en las apelaciones civiles de las cortes municipales para ante las de distrito, las providencias, resoluciones o autos por los cuales se creyere perjudicado el apelante. Así, pues, a los efectos del derecho del acusado a impugnar en la corte de distrito la validez de la orden de allanamiento, es inmaterial que la cuestión no se hubiera levantado en la corte municipal. Lo que exige la jurisprudencia tanto de las cortes nacionales como de la inmensa mayoría de los Estados, y la de esta misma corte, es que la moción se presente en fecha anterior a la señalada para la vista del juicio, de suerte que no se interrumpa el procedimiento para recibir evidencia y resolver una cuestión colateral. Véanse los casos de *Pueblo* v. *Cerecedo* (1914) 21 D.P.R. 56 y 65 respectivamente; *Pueblo* v. *Lebrón* (1934) 46 D.P.R. 588, y el más reciente de *Pueblo* v. *Santiago* (1939) 55 D.P.R. 999. Véase también a este mismo efecto el resumen que se hace de la jurisprudencia americana sobre el particular en las monografías que aparecen en 24 A.L.R. 1048; 32 A.L.R. 408; 41 A.L.R. 1145; 52 A.L.R. 477, y 88 A.L.R. 348. La constante jurisprudencia del Tribunal Supremo de los Estados Unidos al mismo efecto, aparece en los casos de *Boyd* v. *U. S.,* (1886) 116 U. S. 616; *Weeks* v. *U. S.,* (1914) 232 U. S. 383, L.R.A. 1915–B 834; *Silverthorne Lumber Co.* v. *U. S.,* (1920) 251 U. S. 385; *Gouled* v. *U. S.,* (1921) 255 U. S. 298; *Burdeau* v. *McDowell,* (1921) 256 U. S. 465; y finalmente *Amos* v. *U. S.,* (1921) 255 U. S. 313.

Conviene aquí consignar que en el caso de *Gouled* v. *U. S.*, supra, se sostuvo que la moción puede presentarse aun en el curso del juicio, siempre que se demuestre o surja de la prueba que el acusado se enteró en aquel momento de que tal evidencia estaba en poder del fiscal o que intentaba presentarse contra él. Y en el de *Burdeau* v. *McDowell*, supra, se limitó la doctrina en el sentido de que no es aplicable a aquellos casos en que la evidencia es ilegalmente obtenida por una persona particular, basándose en que la disposición de la Enmienda IV, que prohibe los registros irrazonables, se refiere a actos realizados por agentes del Gobierno y no por particulares.

■ En California, de donde proceden los artículos 517 y 518 invocados por el fiscal, no hemos encontrado ningún caso en que se apliquen esos artículos. Existe allí, por el contrario, una regla que sólo impera en California y en muy pocos Estados, que sostiene que por ilegal que haya sido la obtención de la evidencia, ésta, si es material a la causa que se juzga, es admisible contra el acusado, reconociendo a éste el derecho de establecer la acción que proceda contra el funcionario que ilegalmente la obtuvo. Véase el caso de *People* v. *Mayen,* 188 Cal. 237, 24 A.L.R. 1385, 205 P. 435. Esta doctrina ha sido fuertemente criticada en 8 Cal. Law Review, 347.

Desde los tiempos más remotos se ha profesado un gran respeto por la inviolabilidad del domicilio. Para los romanos era un asilo sagrado la morada de un ciudadano. En la Ley Común, donde se dice que el domicilio de una persona es su castillo, el principio tiene raíces muy hondas. En España, el artículo 215 del Código Penal imponía fuertes penas al funcionario público que no siendo autoridad judicial y no estando en suspenso las garantías constitucionales, entrase en el domicilio de un ciudadano español o extranjero sin su consentimiento, a no ser que cumpliese con los requisitos previstos en la Constitución, y era doble la pena que se le imponía si no devolvía al dueño, inmediatamente des-

pués del registro, los papeles y efectos registrados. La violación de este derecho causó muchos sufrimientos y humillaciones a los habitantes de las Trece Colonias, y, recordándolos, inmediatamente después de adoptada la Constitución Federal elevaron el principio a la categoría de precepto constitucional, consignándolo en la Enmienda IV y dándole sitio preferente en todas las instituciones estatales, como uno de los atributos del hombre libre. Reconociendo el inapreciable valor de este derecho, la Corte Suprema de los Estados Unidos, en *Gouled* v. *U. S.*, supra, y en el caso más reciente de *Grau* v. *U. S.*, (1932) 287 U. S. 124, ha dicho que la Enmienda IV debe ser liberalmente interpretada a fin de preservar la inviolabilidad del domicilio contra registros irrazonables.

Volviendo ahora a la regla de California antes aludida, opinamos que la consecuencia lógica de dicha regla al permitir que evidencia ilegalmente obtenida sea en todo caso admisible como prueba, ofrece un incentivo a funcionarios poco escrupulosos para pasar sobre el precepto constitucional cada vez que deseen conseguir evidencia incriminatoria contra una persona o lograr su convicción de un delito mediante evidencia así obtenida. En cambio, rechazando esa prueba, no sólo se reprimen esos abusos, si que la propia resolución de la corte al rechazarla constituye la mejor reprobación de la conducta ilegal del funcionario.

En Puerto Rico, si bien en los casos de *Cerecedo,* supra, se sigue la doctrina de la mayoría, en el de *Pueblo* v. *Osorio,* 34 D.P.R. 232, este tribunal se desvió un tanto al resolver que un revólver, aun cuando fuere ilegalmente ocupado por un policía, era admisible en evidencia contra el acusado; pero volvió a alinearse con la mayoría en los casos de *Pueblo* v. *Lebrón,* supra, y *Pueblo* v. *Santiago,* supra.

■ Arguye también el fiscal que el incidente sobre ocupación ilegal de evidencia, por ser una cuestión colateral al caso criminal, no debe formar parte de los autos de éste en apelación.

Los procedimientos establecidos para reclamar o hacer valer un derecho civil, como por ejemplo, el de hábeas corpus para hacer valer el derecho a no ser ilegalmente privado de la libertad, y el mismo que nos ocupa—para que se devuelva evidencia ilegalmente obtenida en violación a la garantía constitucional antes indicada—, y cualquier otro procedimiento de la misma índole, son procedimientos de naturaleza civil, pero cuando como en este caso, ese procedimiento civil constituye un incidente de un caso criminal, tan íntimamente relacionado con él que este último no puede resolverse sin tener presente los procedimientos y pruebas relativos a dicho incidente, este último puede y debe revisarse dentro del caso criminal. En este caso no podría dictarse una sentencia en apelación sin tener a la vista el incidente, pues es preciso determinar si la evidencia cuya admisión impugna el acusado, fué o no correctamente admitida y para ello precisaría antes determinar si fué o no obtenida en violación del artículo 2 de nuestra Carta Orgánica y de las leyes insulares anteriormente citadas. Ese es el procedimiento que en apelación se ha seguido en todos los casos que hemos podido examinar, tanto en los de Puerto Rico anteriormente citados como en los de *Weeks* v. *U.S.*, supra, *Silverthorne Lumber Co.* v. *U.S.*, supra, y *Amos* v. *U.S.*, supra.

En el caso de autos, no consta que el acusado impugnase la validez de la orden de allanamiento en la corte municipal; pero como hemos dicho, esa omisión no le impidió promover la cuestión en la corte de distrito, siempre que lo hiciese, como lo hizo, con la suficiente antelación a la fecha señalada para el juicio.

Resuelta así la cuestión preliminar, pasaremos a considerar los méritos del recurso.

La cuestión primordial en este caso es determinar si erró o no la corte sentenciadora al denegar una moción de los acusados para que se anulase la orden de allanamiento, y al admitir en evidencia, con su oposición, los efectos que les fueron ocupados.

El derecho de las personas a estar garantidas contra registros ilegales está asegurado en Puerto Rico por el artículo 2 de nuestra Carta Orgánica, que en lo pertinente dice así:

"No se violará el derecho de estar garantizado contra registros y embargos arbitrarios.

"No se expedirá mandamiento de arresto o registro sino por motivo fundado (*but upon probable cause*) apoyado con juramento o afirmación y describiendo particularmente (detalladamente) el lugar que ha de registrarse y las personas que han de ser detenidas o las cosas que deben ser embargadas." (Peréntesis nuestro.)

Nuestra Legislatura, desde el 27 de febrero de 1902 (Compilación 1911, pág. 64), aprobó la "Ley definiendo los derechos del pueblo", que en su sección 2 prescribe:

"Sección 2.—El derecho del pueblo a estar garantido en sus personas, documentos, hogares y efectos, contra registros o secuestros arbitrarios, no se violará, y no se librará ninguna orden de allanamiento ni de ocupar cosa alguna mueble, sin describir el local que ha de reconocerse o la persona que ha de ser registrada y el objeto de que han de incautarse, *ni sin causa probable apoyada en el juramento o afirmación por escrito.*" (Bastardillas nuestras.)

Además, en el Título XIII del Código de Enjuiciamiento Criminal, bajo el epígrafe "De las Órdenes de Allanamiento", se reglamentó la materia, destacándose entre los artículos de que se compone dicho título, los 503, 504, 505 y 506, que literalmente dicen así:

"Art. 503. No se podrá librar orden de allanamiento sino en virtud de causa probable, apoyada en una declaración jurada citando el nombre o describiendo la persona, y especialmente la prenda sustraída y el sitio que ha de ser reconocido.

"Art. 504. El juez de paz debe, antes de librar la orden de allanamiento, examinar bajo juramento al querellante y a los testigos que éste presentare, tomando sus deposiciones por escrito, las cuales suscribirán.

"Art. 505. *Las deposiciones expondrán los hechos que tiendan a demostrar los fundamentos de la petición, o las causas legítimas que haya para creer que existen tales fundamentos.*

''Art. 506. *Si en vista de ellas el juez de paz quedare plenamente convencido de que hay fundamento para la petición, o causas legítimas para creer en la existencia de aquellos fundamentos,* debe librar una orden de allanamiento, que firmará con el nombre de su cargo oficial y la dirigirá a un agente de orden público de su propio distrito, mandándole que proceda inmediatamente a registrar la persona o sitio que se indica, en busca de la propiedad especificada, la cual se traerá a presencia del juez de paz.''

Veamos ahora cuál fué la declaración jurada a virtud de la cual el Juez Municipal de Mayagüez quedó *"plenamente convencido de que hay fundamento para la petición, o causas legítimas para creer en la existencia de aquellos fundamentos."*

La susodicha declaración dice así:

''Declaración jurada de Oscar Correa y Antonio Fraticelli, P. I.

''En Mayagüez, P. R., a los 14 días de octubre de 1939, ante esta corte comparecen Oscar Correa y Antonio Fraticelli, casados y mayores de edad, vecinos de Mayagüez, P. R., y previo juramento conforme a la ley, dicen:

''Que sus nombres y demás circunstancias personales son como quedan arriba expresadas.

''Que les consta de propio conocimiento y por confidencias obtenidas de personas que les merecen entero crédito, de que Alberto Capriles y Ramón Ramírez, res. calle Buenavista, Bo. Buenavista, Mayagüez, P. R., en su casa residencia, que es de madera, techada de zinc, sin pintar, con balcón en forma de chalet y queda a la izquierda, yendo de norte para sur, allí tienen boletos de boli-pool, libretas, listas de números, lápices, dinero, gomas y otros utensilios utilizados para la manipulación y explotación de una lotería clandestina conocida por boli-pool, violando la ley núm. 25, aprobada por la Legislatura de Puerto Rico en julio 17, 1935.

''Por lo que nos permitimos solicitar de V. H. nos extienda una orden de registro o allanamiento para registrar dicha residencia antes descrita.

''Que lo declarado es la verdad y nada más que la verdad, así lo juramos.

''(Fdo.)  Oscar Correa, P. I.   (Fdo.)  Antonio Fraticelli.

''Jurada y suscrita ante mí hoy 14 de octubre de 1939.

''(Fdo.)  A. Nazario Janer, Juez Municipal.''

Los declarantes sólo aseguran bajo juramento que "les consta de propio conocimiento y por confidencias obtenidas de personas que les merecen entero crédito, que Alberto Capriles y Ramón Ramírez, en su casa residencia . . ." tienen boletos de *bolipool,* libretas, etc. ¿Dónde se exponen los hechos para que el juez municipal, sin descansar enteramente ,en la mera conclusión de los declarantes, pueda determinar por sí mismo si en efecto existe la causa probable? Ya hemos visto que el artículo 505 del Código de Enjuiciamiento Criminal, supra, terminantemente exige que en las declaraciones *"se expondrán los hechos* (no conclusiones) *que tienden a demostrar los fundamentos de la petición,"* y en esta declaración no se expone ningún hecho, sino la mera conclusión de los declarantes y una manifestación de confidencias que aunque les pudieran merecer entero crédito, no podían merecerlo al juez municipal que ni siquiera conocía los nombres de tales confidentes.

En el caso de *State* v. *District Court* (Montana, 1921) 198 Pac. 362, se presentó un *affidavit* que en lo pertinente decía:

"R. B. Hayes, debidamente juramentado, depone y dice:

"Que tiene causa probable para creer y cree que el 5 de febrero de 1921 y desde esa fecha en adelante el relator (acusado) está en posesión de bebidas embriagantes, etc."

Terminó con súplica de que se expidiese una orden de allanamiento.

Bajo un estatuto sustancialmente igual al nuestro, la Corte Suprema de Montana, al anular la orden de allanamiento, se expresó así:

"Bajo esta doctrina *los hechos que sirven de base a la solicitud deberán exponerse bajo juramento, y el magistrado a quien se le presenta la declaración debe determinar su suficiencia sin tener que descansar en la opinión o creencia del solicitante.* Una orden de allanamiento expedida a base de una conclusión del solicitante, sin que en la solicitud se expongan hechos de los cuales el funcionario judicial a quien va dirigida pueda firmar su propia conclusión, no es una demostración de causa probable, basada en un juramento o afirmación dentro del significado de la garantía constitucional."

En el caso de *State* v. *District Court* (Montana, 1926) 244 P. 280, se sostuvo que la declaración jurada debe exponer los hechos suficientes para justificar la expedición de la orden de allanamiento y que un *affidavit* que sólo expone conclusiones es insuficiente. Se dijo además que la regla está muy bien establecida en aquel Estado para que pueda ser controvertida. En la opinión disidente de ese caso, se dice que "causa probable es aquel estado de hechos y circunstancias que induzca a una persona cuidadosa y honrada a creer que el acusado es culpable."

En el de *U. S.* v. *Kelih*, 272 F. 484, se sostuvo que "bajo la enmienda IV, dispositiva de que no se expedirán órdenes de allanamiento excepto por causa probable apoyada en juramento o afirmación, la determinación de la existencia de causa probable a base de los hechos expuestos, o la conclusión legal que justifique la orden, constituye una función judicial y no puede ser delegada por el juez al acusador.

Véanse al mismo efecto *Gore* v. *State* (Okla.) 218 P. 545; *Taylor* v. *Commonwealth*, (Ky.) 249 S.W. 1035; *State* v. *Lock*, (Mo.) 259 S.W. 116; *State* v. *Baltes*, 198 N.W. 282; y *Smoot* v. *State*, (Ga.) 128 S.E. 909.

Y por último, un comentarista de la reconocida autoridad del Juez Cooley, en su obra *"Constitutional Limitations"*, pág. 420, comenta esta cuestión en los siguientes términos:

"Para notificar un auto de una corte (*process*) en una causa criminal, puede apelarse a la violencia para penetrar en el domicilio particular de una persona, bajo las circunstancias que se explican detalladamente en los Tratados de Derecho Penal, que no es necesario enumerar aquí. Hay también casos donde se permite expedir órdenes de registro bajo las cuales el funcionario que las diligencia está legalmente protegido. Pero una orden de allanamiento es una especie de auto (*process*) de naturaleza sumamente arbitraria y a la que no debe recurrirse excepto cuando existan razones urgentes y satisfactorias, exigiéndose el más estricto cumplimiento de la ley que la regula; y si la parte que la diligencia espera estar protegida por dicha orden, es esencial que observe cuidadosamente las disposiciones legales. En primer término, estas órdenes sólo deberán concederse

en los casos expresamente autorizados por la ley y no sin antes demostrar ante un funcionario judicial, bajo juramento, que se ha cometido un delito y que el declarante tiene causa probable para sospechar que el infractor o la propiedad que fué objeto o instrumento del crimen se hallan ocultos en una casa o sitio especificado. La ley, al exigir una demostración de causa probable o razonable para tal sospecha, requiere que *se presente evidencia de hechos que satisfagan al magistrado de que la sospecha está bien fundada,* pues la sospecha misma no es motivo ni puede constituir fundamento para la expedición de la orden de allanamiento *a menos que los hechos la justifiquen.''*

Siendo como es insuficiente la declaración jurada que se presentó en este caso, la orden de allanamiento expedida a virtud de ella es nula, por no estar basada en el *affidavit* que requiere la ley; siendo nula la orden, la evidencia a virtud de ella obtenida es ilegal, y el juez inferior debió declarar con lugar la moción de los acusados para que les fuese devuelta y no permitir su presentación en evidencia.

Si descartamos en este caso la evidencia suministrada por la orden de allanamiento, no existe prueba alguna contra los acusados.

█ Como hemos consignado al principio de esta opinión, la corte *a quo* impuso a los acusados una multa de $200 o en su defecto de pago les condenó a cumplir cuatro meses de cárcel. Aunque este error no ha sido señalado ni discutido por la defensa ni por el fiscal, ni es necesario discutirlo a los efectos de esta opinión, a fin de evitar malas interpretaciones en lo sucesivo, consideramos nuestro deber llamar la atención del juez inferior a la Ley núm. 11 de 8 de abril de 1916 (Cód. Enj. Criminal, ed. 1935, pág. 231), dispositiva de que cuando, como en este caso, la sentencia consiste en una multa o en defecto de pago extinguir pena de cárcel, esta última en ningún caso deberá exceder de noventa días.

*Procede revocar la sentencia objeto de este recurso, y absolver libremente al apelante Alberto Capriles, debiendo también devolvérsele la evidencia que ilegalmente le fué ocupada.*