EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* ONOFRE PIERANTONI, acusado y apelante.

Núms. 12791–92–93.—*Sometidos:* Noviembre 10, 1947. *Resueltos:* Noviembre 26, 1947.

*Ramón R. Cabrera,* abogado del apelante; *Hon. Procurador General Luis Negrón Fernández,* y *J. Rivera Barreras* y *Alberto Picó Santiago, Fiscal* y *Fiscal Auxiliar del Tribunal Supremo,* respectivamente, abogados de El Pueblo, apelado.

El Juez Asociado Señor Marrero emitió la opinión del tribunal.

Onofre Pierantoni fué acusado ante la Corte de Distrito de Ponce del delito de homicidio voluntario, porque allá para el 16 de octubre de 1941,(¹) y en el barrio Jagua Pasto, de Guayanilla, con ocasión de una súbita pendencia y arrebato de cólera acometió y agredió con una escopeta a Elena Caraballo Cedeño, haciéndole un disparo, a consecuencia del cual ésta falleció momentos después. También se le acusó de los delitos de portar armas e infracción a la Ley sobre Registro de Armas.(²) Los casos fueron vistos conjuntamente: el de homicidio voluntario ante jurado y los *misdemeanors* ante tribunal de derecho, por la prueba sometida para el delito grave. El jurado rindió veredicto condenatorio en el caso de homicidio y la corte sentenció al acusado a una pena de 5½ años de presidio. En cada uno de los misdemeanors le impuso un mes de cárcel.

De las sentencias dictadas en su contra el acusado ha apelado, radicando un solo alegato en apoyo de sus tres recursos. Sostiene en éste que (1) la corte inferior erró al admitir, con la oposición de la defensa, la pistola ocupada por el Jefe Molina en la casa del acusado, un día después de cometidos los hechos, sin haber sido identificada debidamente dicha pistola, ni haber sido ocupada mediante orden de allanamiento al efecto; (2) al admitir los dos cartuchos de escopeta ocupados en la residencia del acusado en este caso, al otro día de cometidos los hechos, sin orden de allanamiento, habiéndose influenciado en esta forma a los señores del jurado; y (3) que el acusado no fué declarado culpable y convicto de portar armas ni de infracción a la Ley de Re-

(¹) Aunque el delito se cometió el 16 de octubre de 1941, no sabemos por qué causas el juicio no se celebró hasta el 6 de marzo de 1946.

(²) El delito de portar armas consistió en haber portado ilegalmente la escopeta con que se cometió el homicidio, y el de infracción a la Ley de Registro de Armas en haber tenido en su casa residencia una pistola sin inscribir.

gistro de Armas, habiendo sido sentenciado sin haberse discutido ciertas cuestiones de derecho que había pendientes.

Consideraremos conjuntamente los dos primeros errores señalados. De los autos se desprende que los testigos Angel Sáez Sáez y Pedro Ortiz Sánchez declararon que la pistola ofrecida en evidencia se les parecía a la que ellos vieron en manos de Onofre Pierantoni el día 16 de octubre de 1941, minutos antes de cometer éste el delito grave de que se le acusa, y que creían que era la misma. Rafael Molina, Jefe de la Policía Insular, quien practicó el arresto del acusado, de manera enfática manifestó que la pistola que se le mostraba era la que él había ocupado en casa del acusado. Igual manifestación hizo en relación con los dos cartuchos de escopeta. Hubo, por tanto, suficiente identificación de ambas cosas. *Pueblo* v. *Vega,* 56 D.P.R. 437.

Si el acusado creyó que tanto la pistola como los cartuchos fueron ocupados ilegalmente, lo procedente hubiera sido que él radicara una moción sobre supresión de evidencia. Mociones de esa naturaleza por lo general deben presentarse con antelación al juicio. *Pueblo* v. *Capriles,* 58 D.P.R. 548; y *Pueblo* v. *Acevedo,* 59 D.P.R. 114. Hay casos, desde luego, en que la cuestión puede suscitarse en el curso mismo del juicio. *Pueblo* v. *Capriles,* supra, pág. 553, y *Pueblo* v. *Nieves Marzán,* ante, pág. 305. Empero, en estos casos el acusado no planteó en la corte inferior en ningún momento la cuestión de la ilegalidad del modo en que se obtuvo la evidencia ofrecida en su contra. Meramente sostuvo que no había habido suficiente identificación de la pistola y que los cartuchos no estaban conectados en forma alguna con la demás evidencia presentada en el caso.

De los autos se desprende, asimismo, que tanto la pistola como los cartuchos fueron ocupados en la propia casa del acusado por el Jefe de la Policía Rafael Molina. Estando Pierantoni acusado de un delito grave, la policía no necesitaba orden de allanamiento para arrestarle, ya que de

acuerdo con el artículo 116 del Código de Enjuiciamiento Criminal "Un oficial de orden público . . . . . puede, sin una orden de arresto, detener a una persona: . . . . . 3. Cuando en realidad se ha cometido *'felony'* (delito muy grave), y él tiene motivos racionales para creer que la persona arrestada lo ha cometido." Además, como el delito de que se acusaba a Pierantoni era un felony, el oficial de orden público, de ser necesario, podía penetrar en su casa y hasta descerrajar la puerta de la casa de éste para arrestarle. Artículo 124, Código de Enjuiciamiento Criminal.

█ En lo que concierne a la ilegalidad de la evidencia obtenida diremos finalmente que el acusado plantea por primera vez la cuestión en apelación y que esto, naturalmente, no puede hacerse. *Pueblo* v. *Figueroa,* 59 D.P.R. 918, y casos citados a la página 919.

Dadas las consideraciones anteriores, creemos que tanto la pistola como los dos cartuchos fueron debidamente identificados; que aún aceptando a los fines de esta opinión que dichos objetos fueron ocupados ilegalmente, tal ilegalidad no se planteó en ningún momento; y que la cuestión relativa a la ilegalidad de la ocupación de efectos ofrecidos en evidencia no puede suscitarse por primera vez en apelación. No se han cometido, en su consecuencia, los dos primeros errores señalados.

██ Pasemos ahora al tercer error. Desde que se le leyó la acusación en el caso de homicidio la defensa expresó su deseo de que los tres casos se vieran conjuntamente y anunció que en relación con los misdemeanors tenía ciertas cuestiones de derecho que plantear. Durante el curso del juicio hizo manifestaciones similares. Más tarde y luego de rendirse por el jurado un veredicto condenatorio, reiteró su intención de plantear esas cuestiones de derecho. Sin embargo, en ningún momento se le expuso a la corte en qué consistían dichas cuestiones ni se dió oportunidad a ésta para resolverlas, no obstante el hecho de haber la corte inferior

señalado distintas fechas para proceder al acto de dictar sentencia. El 20 de marzo de 1946, fecha finalmente señalada por la corte para tal fin, compareció tan sólo el acusado, mas no así sus abogados. La corte, velando por los intereses de éste, procedió entonces a designarle un abogado de oficio para que le representara en el acto de dictarse sentencia. El abogado aceptó la designación y el juez entonces, dirigiéndose al acusado manifestó: "Usted tenía un caso de asesinato y fué declarado culpable de homicidio voluntario.[3] Fué declarado culpable por el jurado. Por registro de armas y portar armas fué declarado culpable también. ¿Hay alguna razón para que no se dicte sentencia?" Al respondérsele negativamente el juez continuó diciendo: "La corte le va a imponer, en el caso de homicidio voluntario, cinco años de presidio[4] y en el caso de portar armas, un mes de cárcel y en el de registro de armas un mes de cárcel." En ningún momento posterior solicitó el acusado remedio alguno de la corte inferior en relación con los misdemeanors. Pudo hacerlo así y nunca lo hizo y plantea ahora por primera vez la cuestión ante este Tribunal. Tampoco creemos que este error existe. Conforme dijimos en *Pueblo* v. *Rosario,* 39 D.P.R. 84, en casos de delitos menos grave el procedimiento seguido por el juez de la corte inferior es una forma lacónica bien entendida, usada por las cortes, para declarar a un acusado culpable y para sentenciarlo.

En adición a los errores específicamente señalados, insiste el apelante en que de toda la evidencia practicada aparece que los hechos ocurrieron dentro de la propia finca del

---

[3] Tal vez el juez se equivocó al expresar que el acusado tenía un caso de asesinato y fué declarado culpable de homicidio voluntario. (Los autos demuestran que la acusación por la cual se juzgó a Pierantoni imputaba a éste el delito de homicidio voluntario.) Hemos dicho "tal vez" porque es posible que la acusación originalmente radicada contra el acusado le imputara el delito de asesinato.

[4] En el documento que bajo el título de "Acta de la Sentencia" figura a la página 4 del Legajo de Sentencia aparece que la pena impuesta para el homicidio fué de 5½ años de presidio.

acusado y su esposa, pudiendo él, en su consecuencia, libremente transitar por ella con una escopeta.

De acuerdo con la Ley núm. 14 de 25 de junio de 1924, (Segunda Legislatura Extraordinaria, pág. 115), sus disposiciones no serán aplicables: "5.—A la portación de armas dentro de la propia casa o finca;". La prueba que desfiló en este caso fué contradictoria. Mientras la de cargo tendió a demostrar que el acusado portaba la referida escopeta por un "camino real" y que el delito se cometió en una finca de Juana Ramos, la de la defensa tendió a probar que no hubo tal portación por el camino vecinal y que la finca donde ocurrieron los hechos pertenecía a la Sucesión Marini, de la cual la esposa del acusado formaba parte. La corte de distrito al dictar sentencia en la forma que lo hizo indudablemente dirimió el conflicto en la prueba. No creemos que debemos alterar su conclusión a este respecto. *Pueblo* v. *Santos,* ante, págs. 650, 653.

*Deben confirmarse las sentencias apeladas.*