EL PUEBLO DE PUERTO RICO, apelado, *v.* RAMÓN BONILLA RIVERA, acusado y apelante.

*Número:* CR-84-59    *Resuelto:* 30 de noviembre de 1987

*Dixon Cancel Mercado*, abogado del apelante; *Rafael Ortiz Carrión, Procurador General* y *Ricardo E. Alegría Pons, Procurador General Auxiliar*, abogados del apelado.

## SENTENCIA

El apelante fue convicto ante tribunal de derecho por infracción a la Sec. 4 de la Ley Núm. 220 de 1948 (33 L.P.R.A. sec. 1250), que consistía en poseer material relacionado con el juego ilegal de bolita. Por los fundamentos expuestos a continuación, se confirma la sentencia apelada.

### I

La prueba en el caso de autos consistió en los testimonios de los agentes Beldredín Román y José A. Ramírez, y la propia evidencia ocupada. La defensa únicamente presentó en evidencia un recorte del periódico *El Vocero*, de 5 de abril de 1983.

El agente José A. Ramírez, de la División de Control del Vicio, declaró que lleva cinco años trabajando en dicha división, y que interviene específicamente en transacciones ilegales del juego de bolita. Durante el mes de junio de 1984 le fue asignada una investigación relacionada con el juego de "bolipool" en el pueblo de Cabo Rojo. El 23 de junio, mientras recorría el sector Monte Grande de dicho pueblo, decidió entrar al Colmado Martínez para comprar una cerveza. Mientras conversaba con el encargado del negocio,

entró un joven trigueño, delgado, de cabello rizado, conocido por el apodo de "Choclo". Poco después llegó al colmado el apelante, quien, dirigiéndose a "Choclo", le pidió que le entregara "las listas". "Choclo" le contestó que las tenía en su auto; que lo acompañara. El agente Ramírez procedió a salir del negocio hacia su auto, que estaba estacionado frente al negocio, y al caminar cerca del apelante y de "Choclo" vio que este último le entregó una hoja de papel con números de tres cifras, guión y cantidades a la derecha.

Continuó declarando que el apelante abordó un automóvil marca Toyota color marrón, y se alejó del lugar. El agente decidió seguirlo hasta que el imputado estacionó el auto frente a una residencia en la calle Margarita de dicho barrio. Entró en la residencia con un maletín color negro. Minutos después entró en la casa el Sr. Felipe Troche, quien fue convicto en una ocasión anterior por infracción a la Ley de Bolita. Al otro día, el agente regresó al lugar para continuar la vigilancia. Durante veinte minutos observó entrar y salir de la residencia a algunas personas, entre ellas, a varias vinculadas con el "bolipool", las cuales portaban sobres manila, frecuentemente utilizados por los boliteros.

El agente Ramírez declaró bajo juramento estos hechos y el 26 de junio de 1984 fue expedida una orden de allanamiento por el tribunal para registrar la referida residencia en busca de material relacionado con el juego ilegal de bolita.

La tarea de realizar el allanamiento fue encomendada al agente Beldredín Román, quien declaró en juicio que se presentó a la dirección indicada junto a varios policías. Llamaron a la puerta y mostraron al apelante la orden de allanamiento. Al registrar la casa hallaron en un gavetero de una de las habitaciones material de bolita, que consistía en una libreta (*note book*) color rojo en la que aparecían nombres de personas con números de tres cifras, guión y

cantidades a la derecha. También fue ocupada la suma de $5,947 en efectivo. El agente Román procedió a arrestar al apelante, quien fue conducido ante un magistrado que determinó causa probable por infracción a la Sec. 4 de la Ley Núm. 220 de 15 de mayo de 1948 (33 L.P.R.A. sec. 1250). El material delictivo ocupado fue admitido en evidencia. Fue declarado culpable del delito imputado y se le impuso $400 de multa, más costas.

## II

El apelante plantea los señalamientos de error siguientes:

1. Erró el Honorable Tribunal en la apreciación de la prueba.
2. Erró el Honorable Tribunal al declarar sin lugar la moción de supresión de evidencia radicada por el acusado.
3. Erró el Honorable Tribunal al declarar sin lugar la moción de absolución perentoria solicitada por la defensa.
4. Que no se estableció más allá de duda razonable la comisión del delito por parte del acusado.
5. Cometió error el Honorable Tribunal al permitir que el Ministerio Fiscal probara su caso única y exclusivamente utilizando la presunción controvertible a saber: la de que se presumen incorrecto[s] los procedimientos judiciales.

En su alegato, el apelante sólo discute el segundo error relativo a haberse declarado sin lugar la moción de supresión de evidencia. Plantea que la declaración jurada prestada por el agente Ramírez no reúne los elementos suficientes para que el magistrado determinara causa probable conforme a Derecho y ordenara el registro de la residencia del apelante. Sostiene que la declaración es estereotipada, basada en información falsa, total o

parcialmente, por lo que el tribunal erró al declarar sin lugar la moción de supresión de evidencia.

En síntesis, argumenta que no es creíble que "Choclo" y el apelante realizaran actividades ilegales a plena luz del día, que hablaran en alta voz sobre "la lista", y que el agente pudiera observar el contenido del papel entregado al apelante en una fracción de segundo. Hace referencia a una noticia publicada en el periódico *El Vocero*, de 5 de abril de 1983, marcada como *Exhibit* 1 de la defensa, en la que aparece una foto el agente Ramírez conduciendo a "Choclo" por los pasillos del tribunal luego de ser arrestado y acusado por violación a la Ley de Bolita. Arguye que conociendo "Choclo" la identidad del agente encubierto, resulta increíble que no le reconociera y se abstuviera de llevar a cabo supuestos actos delictivos. Por último, expone que el observar por veinte (20) minutos que varias personas entraban y salían de la residencia del acusado no es suficiente para inferir que se dedicaba a colectar, distribuir, o administrar material de bolita.

## III

No se cometió el error. La Regla 231 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, dispone los requisitos para que un magistrado expida una orden de allanamiento:

> No se librará orden de allanamiento o registro sino en virtud de declaración escrita, prestada ante un magistrado bajo juramento o afirmación, que exponga los hechos que sirvan de fundamento para librarla. Si de la declaración jurada y del examen del declarante el magistrado quedare convencido de que existe causa probable para allanamiento o registro, librará la orden, en la cual se nombrarán o describirán con particularidad la persona o el lugar a ser registrado y las cosas o propiedad a ocuparse. La orden expresará los fundamentos habidos para expedirla, y los nombres de las personas en cuyas declaraciones juradas se basare. Ordenará al funcionario a quien fuere dirigida

registre inmediatamente la persona o sitio que en ella se indique, en busca de la propiedad especificada, y devuelva al magistrado la orden diligenciada, junto con la propiedad ocupada. La orden dispondrá que será cumplimentada durante las horas del día, a menos que el magistrado, por razones de necesidad y urgencia, dispusiere que se cumplimente a cualquier hora del día o de la noche.

Hemos resuelto que al determinar causa probable para la expedición de una orden de allanamiento no estamos llamados a establecer si la ofensa que se imputa fue verdaderamente cometida. Sólo debe examinarse si el deponente tuvo base razonable, al momento de prestar la declaración jurada y haberse librado la orden de registro, para creer que se estaba violando la ley en el lugar a ser allanado, y si los hechos aparentes que se desprenden de la declaración jurada son de tal naturaleza que una persona prudente y razonable pudiera creer que se ha cometido la ofensa imputada. Reiteradamente hemos sostenido que los agentes encubiertos son imprescindibles para perseguir el juego ilegal de la bolita. *Pueblo* v. *Tribunal Superior,* 102 D.P.R. 524, 527 (1974); *Pueblo* v. *Bogard,* 100 D.P.R. 565, 570 (1972); *Pueblo* v. *Tribunal Superior,* 91 D.P.R. 19 (1964).

La declaración jurada prestada por el agente Ramírez cumple con la ley y la jurisprudencia. Describió con detalle la conversación habida entre el apelante y "Choclo" en el Colmado Martínez, vio a "Choclo" cuando le entregó una hoja de papel con números de tres cifras, guión y cantidades a la derecha. Siguió el auto del apelante, el cual describió adecuadamente, hasta que lo estacionó frente a la residencia allanada. Vio entrar una persona convicta bajo la Ley de Bolita y al otro día otras relacionadas con el negocio de "bolipool". El agente Ramírez dio bajo juramento estos detalles y las fechas y lugares precisos en los que realizó su investigación, así como también sus observaciones. Describió a las personas envueltas y ofreció sus apodos. Esto,

unido a su experiencia de cinco años en casos de bolita, es suficiente para que una persona prudente y razonable pueda creer que se está cometiendo un delito.

La declaración jurada prestada por el agente Ramírez cubre tres situaciones de hecho para fundamentar la orden de registro y allanamiento.

La *primera* se refiere a la descripción en detalle de la conversación habida entre el apelante y "Choclo" en el Colmado Martínez, en la que en síntesis vio a "Choclo" cuando le entregó una hoja de papel con números de tres cifras, guión y cantidades a la derecha.

La *segunda* se refiere a la descripción también detallada que hace el agente cuando sigue el auto del apelante y éste se estaciona en la marquesina de su residencia y observa incluso que un bolitero convicto (el Sr. Felipe Troche) entró a dicha residencia. Sobre el particular la declaración jurada lee como sigue:

> Yo abordé mi auto y observé que el Sr. Bonilla se echó la lista de números de bolita en el bolsillo del pantalón y abordó el auto marca Toyota color brown, de cuatro puertas, tablilla 38J706 y se marchó conduciendo el mismo y llevándose consigo el material de bolita. [É]ste se diri[g]ió hacia las Parcelas Margarita del referido pueblo y llegó hasta la Calle Margarita donde estacionó el referido auto en la marquesina de una residencia de cemento pintada de crema y alero color brown número 134. Al desmontarse del referido auto sacó del interior un maletín color negro y entró a la referida residencia. Yo me quedé cerca de la misma para prestarle una vigilancia discreta. Pasados unos minutos observé que llegó *a la referida residencia el bolitero convicto Sr. Felipe Troche y éste llegó conduciendo un auto marca Buick color blanco y negro.* [És]te entró a la referida y estuvo allí como 10 minutos y salió y se marchó rápidamente. Como hac[í]a rato que yo estaba allí decidí marcharme para no levantar sospechas y que no se me fuera a dañar la investigación. Regresé [al] Cuartel de Policía de Mayag[ü]ez donde le informé lo sucedido a mi Supervisor el Sgto. Eugenio Soto

Ruiz quien me dió instrucciones para que le prestara otra vigilancia a la referida residencia. (Énfasis suplido.)

La *tercera* se refiere a la descripción que hace el agente al otro día de los hechos ocurridos en la residencia allanada. Dicho día 25 de junio de 1984, el agente observó entrar al bolitero convicto Sr. Arcángel Rodríguez Vega. De la referida declaración jurada surge lo siguiente:

Que el día 25 de junio de 1984 y en horas de la mañana re[g]resé a las Parcelas Margarita de Cabo Rojo para continuar con la vigilancia discreta a la residencia número 134 de la Calle Margarita donde el Sr. Bonilla reci[b]e material de bolita y/o bolipool. Al llegar al referido sector observé que el auto marca Toyota color brown, tablilla 38J706 se encontraba estacionado en la marquesina de la referida residencia. Me quedé cerca de la misma y observé que entraban y sal[í]an diferentes personas a la misma r[á]pidamente. [L]*uego llegó el bolitero convicto Sr. Arc[á]ngel Rodr[í]guez Vega* y [é]ste llevaba en sus manos un sobre tipo manila grande de los com[ú]nmente usados por los boliteros para llevar el material de bolita. Luego se me acercó un señor trigueño delgado y me preguntó que si yo esperaba a alguien a lo que yo le contesté que no, que era que se me había calentado el carro y estaba esperando a que se enfriara. Luego me marché del lugar.

Que por [lo] antes expresado tengo motivos fundados para decir que en la residencia numero 134 de la Calle Margarita de las Parcelas Margarita de Cabo Rojo se colecta, vende y distribuye material relacionado y conectado con el juego ilegal de la bolita y/o "bolipool".

Que la referida residencia se describe como sigue[:] Casa de cemento pintada de crema y alero color brown localizada en la Calle Margarita de las Parcelas Margarita de Cabo Rojo P.R. Tiene marquesina al lado izquierdo. Tiene en la marquesina 5 ventanas tipo "miami" y una puerta de entrada en madera. Tiene además medio balcón con puerta de entrada en madera al lado derecho. Tiene al frente verja de cemento y alambre [*cyclone*] y port[ó]n de rejas negro. Tiene una escalera al lado izquierdo que da acceso al techo de la misma. En el techo tiene verja de alambre [*cyclone*] a vuelta redonda.

Por el lado derecho colinda con residencia de cemento pintada de blanco. Por el lado izquierdo colinda con residencia de cemento pintada de crema. Por el frente colinda con la Calle Margarita.

La secuencia de observaciones personales del agente Ramírez sobre lo ocurrido en la residencia allanada son de tal naturaleza que una persona prudente y razonable puede creer que se ha cometido la ofensa imputada.

Un examen minucioso de la exposición narrativa de la prueba refleja que el agente Ramírez no contradijo en su testimonio durante el juicio lo expuesto en su declaración jurada. La defensa por su parte en ningún momento cuestionó las observaciones hechas por el agente Ramírez de la residencia del apelante Bonilla, ni de que en dos días distintos entraran a la misma dos convictos por infracción de la Ley de Bolita.

La secuencia de eventos narrados en la declaración jurada no pueden examinarse aisladamente, sino en forma integrada. El testimonio del agente Román en la declaración jurada y luego en el juicio no es estereotipado. No constituyó un testimonio atípico, flaco o descarnado.

En lo relativo a lo improbable de que el "Choclo" hiciera la transacción ilegal frente al agente Román supuestamente conociéndolo, citamos de la transcripción narrativa de la prueba:

> Se le mostró al testigo lo que posteriormente fue marcado como [*Exhibit*] I de la defensa, a saber, una página correspondiente al periódico El Vocero, correspondiente al *5 de abril de 1983*. Se le pidió que identificara en la fotografía que mostraba dicha página, a las personas que la misma presentaba y el testigo indicó y reconoció en ella al ["Choclo"] acompañado por él y el agente Vega; sobre el sitio que mostraba dicha fotografía señaló que era el pasillo del Cuartel de Mayag[ü]ez y que el ["Choclo"] había sido llevado allí para ser fichado por un delito de bolita y que éste fue fichado en su División por el agente Vega. Indicó el testigo que es correcto

que conocía al ["Choclo"], que lo conocía antes de esa fecha por las investigaciones. Si me conoce de esa fecha[,] me conoce y que entendía que el ["Choclo"] también le tenía que conocer a él. Señaló que con respecto a la transacción presenciada por él el día *23 de junio de 1984* y en la cual supuestamente estuvo involucrado el ["Choclo"] y estando éste a 5 ó 6 pies de él[,] dentro del Colmado Martíne[z] y durante diez minutos, *ocurrió porque tal vez el ["Choclo"] no se acordaba de él.* Si se hubiera acordado de él tal vez no lo hubiera hecho. (Énfasis suplido.)

No existe prueba en los autos de que el agente Román fue reconocido por el "Choclo" en el momento de los hechos. Del testimonio anterior no podemos hacer esa inferencia. Independientemente de ello, sus observaciones subsiguientes de lo ocurrido durante dos días en la residencia del "Choclo", según los hechos expuestos en la declaración jurada prestada por él, unido a su experiencia de cinco años con casos de bolita, son suficientes para que una persona prudente y razonable creyera que en la residencia del apelante se estaba cometiendo un delito. Ello era suficiente para justificar la expedición de la orden.

Vistas las circunstancias totales, no incidió el tribunal de instancia al declarar sin lugar la moción de supresión de evidencia.

## IV

Por no haberse cometido el error señalado, se confirma la sentencia apelada.

Así lo pronunció y manda el Tribunal y certifica el señor Secretario General. El Juez Asociado Señor Negrón García y la Juez Asociada Señora Naveira de Rodón concurren con el resultado. El Juez Asociado Señor Rebollo López disiente con opinión escrita.

(*Fdo.*) Bruno Cortés Trigo
*Secretario General*

—O—

Opinión disidente emitida por el Juez Asociado Señor Rebollo López.

Sentencias como la emitida en el presente caso por una mayoría de los Señores Jueces que componen el Tribunal hace que cobre actualidad lo expresado hace veinticinco (25) años por este mismo Tribunal en el caso de *Pueblo* v. *Luciano Arroyo*, 83 D.P.R. 573, 582 (1961), a los efectos de que nosotros los "jueces no debemos, después de todo, ser tan inocentes cómo para creer declaraciones que nadie más creería".

I

Según la propia sentencia que se emite el alegado agente encubierto José A. Ramírez, perteneciente a la División de Control del Vicio de la Policía de Puerto Rico, declaró que:

> ...lleva cinco años trabajando en dicha División, interviniendo específicamente en transacciones ilegales del juego de bolita. Durante el mes de junio de 1984 le fue asignada una investigación relacionada con el juego de "bolipool" en el pueblo de Cabo Rojo. El día 23 de junio, mientras recorría el sector Monte Grande de dicho pueblo, decidió entrar al Colmado Martínez para comprar una cerveza. Mientras conversaba con el encargado del negocio, entró un joven trigueño, delgado, de cabello rizado, conocido por el apodo de "Choclo". *Poco después llegó al colmado el apelante, el cual, dirigiéndose a "Choclo" le pidió que le entregara "las listas". "Choclo" le contestó que las tenía en su auto; que lo acompañara.* El agente Ramírez procedió a salir del negocio hacia su auto, que estaba estacionado frente al negocio, *y al caminar cerca del apelante y de "Choclo" vi[o] que [e]ste último le entregó una hoja de papel con números de tres cifras, guión y cantidades a la derecha.* (Énfasis suplido.)

Por otro lado —y con el propósito de llevar al ánimo del juzgador que resultaba increíble que lo narrado por el

agente fuera cierto— durante el juicio celebrado la defensa del aquí apelante presentó prueba irrefutable de que el acompañante de éste sabía que el testigo de cargo era miembro de la división de la Policía de Puerto Rico que brega con los supuestos infractores a la Ley de la Bolita, esto es, la División de Control del Vicio. Dicha prueba, según ello igualmente surge de la sentencia que se emite, consistió de:

> ...una noticia publicada en el períodico El Vocero de fecha 5 de abril de 1983, marcada como [*Exhibit*] 1 de la defensa, en la que aparece una foto [d]el agente Ramírez conduciendo a "Choclo" por los pasillos del tribunal luego de ser arrestado y acusado por violación a la [L]ey de [B]olita.

## II

Ante ese cuadro de hechos, este Tribunal *se limita* a cuestionarse si en el presente caso se cumplió con los *requisitos técnicos* que para la expedición de una orden de allanamiento exige la Regla 231 de Procedimiento Criminal y la jurisprudencia interpretativa de la misma. Concluyendo que la "declaración jurada prestada por el agente Ramírez cumple con la ley y la jurisprudencia", el Tribunal rechaza la contención del apelante a los efectos de que el foro de instancia erró "al declarar sin lugar la moción de supresión de evidencia".

## III

Disentimos. Somos del criterio que nuestra función revisora no se limita a examinar si en un caso en particular se cumple o no con los tecnicismos legales que establece nuestro ordenamiento jurídico. Dicha función va mucho más allá: estamos *obligados* a velar por que en nuestra jurisdicción se haga la mejor justicia de que se es capaz en un pueblo como el nuestro.

En el presente caso no hay duda que el acompañante del apelante tuvo la oportunidad de *observar bien* al supuesto encubierto. Ello surge de la propia declaración de este último. De hecho, supuestamente estuvieron tan cerca los unos de los otros como para que el agente, alegadamente, pudiera escuchar lo dicho por el apelante y ver los "números de tres cifras, guión y cantidades en la derecha" en una hoja de papel en manos del apelante y su acompañante.

¿Quién puede creer que una persona va a hacer manifestaciones en alta voz que lo señalan como violador de la Ley de la Bolita, y va a bregar con material de bolita, en presencia de una persona que él sabe es agente de la División de Control del Vicio de la Policía, *agente que precisamente lo había arrestado anteriormente por infracción a dicha ley*? Ciertamente nosotros no estamos dispuestos a ello.

## IV

En resumen, disentimos por entender que erró el foro de instancia al no declarar con lugar la moción de supresión de evidencia que radicara el apelante en el presente caso por cuanto lo afirmado por el agente Ramírez en la "declaración jurada que sirvió de base a la expedición de la orden de allanamiento" *obviamente es falso, total o parcialmente*. Véase Regla 234, inciso (f), de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 234(f).

*Disentimos, en adición, por entender que decisiones como la que se emite en el presente caso son nocivas al sistema de justicia en Puerto Rico.* No hay duda que este Tribunal ha resuelto —correctamente, a nuestro entender— que la institución de agente encubierto es necesaria en la persecución y castigo de actividades delictivas que se llevan a cabo en la clandestinidad. No es menos cierto, sin embargo, que la experiencia nos ha demostrado que dicha

institución necesita mejorarse. La "aprobación" por parte de este Tribunal —al confirmar la convicción— de una situación como la que plantea el presente caso, donde existe una declaración jurada obviamente mendaz, tiene el efecto indeseado y perjudicial de evitar que la Policía de Puerto Rico mejore no sólo su personal sino sus métodos de investigación, lo cual debe ser el objetivo de todos.