ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| EL PUEBLO DE PUERTO RICO<br><br>Recurrido<br><br><br>V.<br><br>EDGARDO ROSARIO MÉNDEZ<br><br>Peticionario | TA2025CE00731 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br>Caso Núm.:<br>F TR2025-0072<br>F TR2025-0073<br><br>Sobre:<br><br>Art. 3.23 Ley 22<br>Art. 7.02 Ley 22 |

Panel integrado por su presidenta, la Juez Grana Martínez, el Juez Ronda Del Toro y el Juez Rodríguez Casillas[1]

**Ronda Del Toro, Juez Ponente**

## SENTENCIA

En San Juan, Puerto Rico, a 20 de enero de 2026.

El señor Edgardo Rosario Méndez (en adelante, peticionario o señor Rosario Méndez) mediante recurso de *certiorari* presentado el 5 de noviembre de 2025, nos solicita que dejemos sin efecto la *Resolución* emitida por el Tribunal de Primera Instancia, Sala de Carolina (TPI o foro primario) el 14 de octubre de 2025, notificada el 20 de octubre de 2025. Mediante el referido dictamen, el foro primario declaró "No Ha Lugar" la *Solicitud de Supresión de Evidencia* presentada por el peticionario.

Por los fundamentos que expondremos a continuación, se expide el auto de *certiorari* a los fines de modificar, únicamente, la determinación del foro primario que no suprimió como evidencia la prueba de Alco-Sensor.

---

[1] Conforme a la Orden Administrativa OATA-2025-240 el Hon. Roberto Rodríguez Casillas, sustituyó a la Hon. Glorianne M. Lotti Rodríguez.

**I.**

El 10 de febrero de 2025 se presentaron dos (2) denuncias en contra del señor Rosario Méndez por alegadas infracciones a los Artículos 3.23 (A) y 7.02 de la Ley Núm. 22-2000, según enmendada, mejor conocida como la *Ley de Vehículos y Tránsito de Puerto Rico*.[2] En esencia, le imputan al peticionario conducir un vehículo de motor bajo los efectos de bebidas embriagantes. Específicamente, las denuncias indicaron que el señor Rosario Méndez arrojó un 0.123% de alcohol en su organismo.

Luego de varios trámites procesales, incluido el descubrimiento de prueba, el peticionario interpuso una *Moción de Supresión de Evidencia*.[3] Allí, sostuvo que se debía suprimir la prueba de Alco-Sensor pues esta fue realizada a seis (6) minutos de la intervención, contrario a lo requerido en el Reglamento 9234, *infra*, que son veinte (20) minutos. Asimismo, argumentó que se debía suprimir la prueba de Intoxilyzer 9000, pues fue realizada por un arresto ilegal. En esa línea, concluyó que, la prueba de Intoxilyser fue fruto del árbol ponzoñoso, ya que el agente interventor no tuvo motivos fundados para arrestarlo por conducir bajo los efectos de bebidas embriagantes.

En respuesta, el Ministerio Público presentó su *Oposición a la Moción de Supresión de Evidencia*.[4] En esencia, reconoció que la prueba se hizo a los seis (6) minutos de la intervención, pero que eso no invalidaba automáticamente la prueba de Intoxilyzer 9000. Esto pues, según este el agente interventor tenía motivos fundados para arrestar al señor Rosario Méndez.

---

[2] Entrada #1 del Sistema Unificado de Manejo y Administración de Casos del Tribunal de Primera Instancia (SUMAC TPI).
[3] Entrada #4 de SUMAC TPI.
[4] Entrada #3 de SUMAC TPI.

Así las cosas, el 14 de octubre de 2025 se celebró la Vista de Supresión de Evidencia. Según surge de esta vista, la prueba de Alco-Sensor fue realizada a los seis (6) minutos de la intervención y sin esta prueba lo único que el agente interventor tenía para sospechar del señor Rosario Méndez, por propio testimonio del agente, era un fuerte olor a alcohol y que este tenía los ojos rojos. Del testimonio del agente también surgió que el peticionario fue detenido por cinturón y había otro pasajero en el carro. Además, este confirmó que el peticionario no condujo a exceso de velocidad y tampoco condujo zigzagueando. También, el agente interventor indicó que el señor Rosario Méndez estaba en muletas y que cuando se bajó nadie lo ayudó a bajarse y caminó solo hasta la patrulla sin caerse o tropezarse.

Analizada las dos posiciones, el foro primario emitió una *Resolución* en la que denegó la *Solicitud de Supresión de Evidencia*.[5] De modo que, resolvió que el Reglamento 9234, *infra,* no requería que la policía esperara los veinte (20) minutos para hacer la prueba de Alco-Sensor. Además, concluyó que aún sin la prueba del Alco-Sensor, el policía tenía motivos fundados para arrestar al peticionario, ya que este olía a alcohol y tenía los ojos rojos.

Inconforme con el proceder del foro primario, el 5 de noviembre de 2025, el peticionario acudió ante este Tribunal mediante recurso de *certiorari* y señala los siguientes errores:

> ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL CONCLUIR QUE EL REGLAMENTO 9234 NO EXIGE UN PERÍODO DE OBSERVACIÓN DE VEINTE (20) MINUTOS PARA REALIZAR UNA PRUEBA PRELIMINAR DE ALCOHOL EN LA SANGRE (ALCO-SENSOR); Y, POR LO TANTO, NO SUPRIMIR DICHA PRUEBA EN CONFORMIDAD CON LO RESUELTO EN PUEBLO V. CARABALLO BORRERO, 187 DPR 265 (2012).

---

[5] Entrada #2 de SUMAC TPI.

ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL CONCLUIR, SIN CONTAR CON LA PRUEBA DE ALCO SENSOR, QUE EXISTÍAN MOTIVOS FUNDADOS PARA DETENER A ROSARIO MÉNDEZ Y SOMETERLO A UNA PRUEBA DE INTOXILYZER.

TERCER SEÑALAMIENTO DE ERROR- ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL NO SUPRIMIR LA PRUEBA DE INTOXILYZER POR SER ESTA FRUTOS DEL ÁRBOL PONZOÑOSO.

Luego de haber solicitado prórroga, el 23 de diciembre de 2025, El Pueblo de Puerto Rico, representado por la Oficina del Procurador General de Puerto Rico, presentó su oposición al recurso de *certiorari.* Allí, argumentó que el foro primario no erró al concluir que era innecesario esperar que transcurriera el periodo de observación de veinte (20) minutos para efectuar la prueba preliminar con el Alco-Sensor. Dado a que, no se exige el cumplimiento del referido periodo de espera, si luego se realizará una prueba final con un Intoxilyzer, para la cual sí se necesitaría cumplir con el periodo de espera de veinte (20) minutos.

**II.**

**A.**

El recurso de *Certiorari* es un auto procesal extraordinario por el cual un peticionario solicita a un tribunal de mayor jerarquía que revise y corrija las determinaciones de un tribunal inferior. Pueblo v. Rivera Montalvo, 205 DPR 352, 372 (2020). A su vez, se ha indicado que "el *certiorari* es un mecanismo extraordinario que procede, discrecionalmente, cuando no hay otro mecanismo disponible." Pueblo v. Guadalupe Rivera, 206 DPR 616, 632 (2021). A diferencia del recurso de apelación, el tribunal superior puede expedir el auto de *certiorari* de manera discrecional. Pueblo v. Rivera Montalvo, *supra,* pág. 372; Pueblo v. Díaz de León, 176 DPR 913, 917-918 (2009).

El Tribunal Supremo ha indicado que la discreción significa tener poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción. Pueblo v. Rivera Santiago, 176 DPR 559, 580 (2009); Pueblo v. Ortega Santiago, 125 DPR 203, 211 (1990).  El adecuado ejercicio de la discreción judicial está "inexorable e indefectiblemente atado al concepto de la razonabilidad". Pueblo v. Ortega Santiago, *supra,* pág. 211.  Así pues, un tribunal apelativo no intervendrá con las determinaciones discrecionales de un tribunal sentenciador, a no ser que las decisiones emitidas por este último sean arbitrarias o en abuso de su discreción. Pueblo v. Rivera Santiago, *supra*, pág. 581.

Con el fin de que podamos ejercer de una manera sabia y prudente nuestra facultad discrecional de entender o no en los méritos de los asuntos que son planteados mediante el recurso, Regla 40 Reglamento del Tribunal de Apelaciones, según enmendado, *In re Aprob Enmdas.*, Reglamento TA, 2025 TSPR 42, 215 DPR ___ (2025), señala los criterios que debemos tomar en consideración al atender una solicitud de expedición de un auto de *certiorari*.  La referida regla dispone lo siguiente:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari,* o de una orden de mostrar causa:
>
> a.  Si el remedio y la disposición de la decisión recurrida a diferencia de sus fundamentos son contrarios a derecho.
>
> b.  Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> c.  Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> d.  Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> e.  Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

f.  Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

g.  Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

**B.**

Tanto la Cuarta Enmienda de la Constitución Federal, Emda. IV, Cont. EE. UU., LPRA, Tomo 1, así como el Art. II Sec. 10 de nuestra Constitución, disponen que todo ciudadano goza del derecho a protección contra registros, incautaciones y allanamientos irrazonables que puedan afectar su persona, casas, papeles y efectos.  Art. II, Sec. 10, Const. ELA, LPRA, Tomo 1. La regla de exclusión consagrada en la citada Sec. 10 del Art. II de la Constitución de Puerto Rico persigue, en primer lugar, disuadir y desalentar a los funcionarios del orden público de violar la protección constitucional. Pueblo v. Álvarez De Jesús, 214 DPR 753, 766 (2024); Toll y Sucn. Rivera Rojas v. Adorno Medina, 130 DPR 352, 358 (1992). Además, busca evitar que el Estado se beneficie de sus propios actos ilegales al momento de encausar criminalmente a un ciudadano. Pueblo v. Nieves Vives, 188 DPR 1, 23 (2013). La regla, por lo tanto, protege la integridad de los tribunales al no permitir que en los procesos judiciales se utilice evidencia que fue obtenida ilegalmente por apartarse de los requisitos constitucionales y estatutarios que deben observarse al expedir y diligenciar una orden de allanamiento.

Ahora bien, este requerimiento constitucional no es absoluto. Un agente del orden público puede realizar un arresto sin previa orden judicial cuando: (1) se ha cometido un delito en su presencia; (2) se ha cometido un delito grave, sea o no en su presencia, y **(3) cuando tuviese motivos fundados para creer que la persona ha cometido un delito grave**. Regla 11 de Procedimiento Criminal, 34 LPRA Ap. II; Pueblo v Caraballo

Borrero, 187 DPR 265, 272-273 (2012); Pueblo v. Serrano Reyes, 176 DPR 437, 444 (2009). (Énfasis nuestro).

El concepto "motivos fundados" es sinónimo del término "causa probable" empleado en el contexto de la expedición de una orden de arresto. Pueblo v Caraballo Borrero, *supra,* pág. 273; Pueblo v. Calderón Díaz, 156 DPR 549, 557 (2002). Los motivos fundados se determinan a base de los criterios de probabilidad y razonabilidad. Pueblo v. Ortiz Alvarado, 135 DPR 41, 47 (1994). En otras palabras, el agente que efectúa un arresto y registro sin orden judicial previa tenga, al momento de hacerlo, debía tener una base razonable que se desprenda de la totalidad de las circunstancias para creer que se está violando la ley. Pueblo v Caraballo Borrero, *supra,* pág. 273

### C.

La Exposición de Motivos de la Ley Núm. 22-2000, nos indica que entre las obligaciones más importantes para el Estado son el promover y velar por la seguridad pública en todas sus variantes. Con ese fin, se responde a las necesidades del pueblo "fortaleciendo las sanciones en cuanto a aquellas violaciones de ley que presentan grave riesgo a la seguridad pública". Íd. Pueblo v. Figueroa Pomales, 172 DPR 403, 422-423 (2007). Entre estas, la práctica de conducir en estado de embriaguez o bajo los efectos de sustancias controladas.

Cónsono con lo anterior, conducir un vehículo en estado de embriaguez y/o bajo los efectos de sustancias controladas representa un peligro para nuestra sociedad. Pueblo v. Martínez Landrón, 202 DPR 409, 417-418 (2019); Pueblo v Caraballo Borrero, *supra*, pág. 274; Pueblo v. Montalvo Petrovich, 175 DPR 932, 944 (2009); Pueblo v. Figueroa Pomales, *supra*, pág. 422. Conforme a tal inquietud, se ratificó una política pública a favor

de evitar muertes en las carreteras ocasionadas por conductores en estado de embriaguez. Pueblo v. Caraballo Borrero, *supra,* pág. 274. En sintonía con ello, el Art. 7.02 de la Ley Núm. 22-2000 establece lo siguiente:

> En cualquier proceso criminal por infracción a las disposiciones del Artículo 7.01 de esta Ley, aplicarán las siguientes normas con relación al nivel o concentración de alcohol existente en la sangre del conductor al tiempo en que se cometiera la alegada infracción, según surja tal nivel o concentración del análisis químico o físico de su sangre, de su aliento, o cualquier sustancia de su cuerpo constituirá base para lo siguiente:
>
> (a) Es ilegal per se, que cualquier persona de veintiún (21) años de edad, o más, conduzca o haga funcionar un vehículo de motor, cuando su contenido de alcohol en su sangre sea de ocho centésimas del uno por ciento (0.08%) o más, según surja tal nivel o concentración del análisis químico o físico de su sangre o aliento.

Con el propósito de guiar y suplementar el proceso para la toma de pruebas de alcohol, el Departamento de Salud creó el "Reglamento para regular los métodos y procedimientos para la toma y análisis de muestras de sangre y aliento por motivos fundados a conductores inhabilitados por el uso de alcohol, drogas y/o sustancias controladas", Reglamento Núm. 9234 del 3 de diciembre de 2020 (en adelante, Reglamento Núm. 9234). En específico, las secciones 13.15 y 13.16 del Reglamento Núm. 9234 disponen lo concerniente a la toma de pruebas de aliento desde que se interviene con el sujeto:

> 13.15 Antes de realizar una prueba con el Intoxilyzer, la persona intervenida se mantendrá bajo observación por un período mínimo de veinte (20) minutos, contados desde la intervención hasta que sople en el instrumento, para asegurarse de que no existe alcohol residual en su boca al momento de efectuarse el análisis.
>
> 13.16 Durante esos veinte (20) minutos, la persona se mantendrá bajo observación; evitando que fume, ingiera alimentos o se provoque vómito. De ocurrir uno de los anteriores, deberá esperar veinte (20) minutos adicionales a partir de la hora en que ocurrió el evento, lo cual se documentará por el agente interventor y/o el operador del instrumento encargado de realizar la prueba.

El referido periodo de observación de veinte (20) minutos tiene el propósito de garantizar un mínimo de precisión y

confiabilidad de la prueba que se administra. Pueblo v. Caraballo Borrero, *supra,* pág. 279. Ahora bien, el incumplimiento de los veinte (20) minutos desencadena serias dudas sobre la confiabilidad de la prueba de aliento. Íd. Esto, porque puede existir alcohol residual en la boca al momento de efectuarse el análisis, lo cual que pueda afectar la corrección de la prueba. Sección 13.15 del Reglamento Núm. 9234. El alcohol residual se define como la "[c]antidad de alcohol que permanece en la mucosa de la boca por algún tiempo después de haberse ingerido alcohol, bien se encuentre en forma líquida o en forma de vapor". Sección 6.03 del Reglamento Núm. 9234.

Conviene señalar que, el periodo de veinte (20) minutos también les aplica a las pruebas con el Alco-sensor o cualquier instrumento similar. En esa línea, la Sección 13.24 del Reglamento Núm. 9234 dispone:

> 13.24. Los artículos 13.15 y 13.16 aplicarán a toda prueba de aliento realizada con el Alco-Sensor o instrumento similar. Sin embargo, de realizarse esta prueba preliminar y haberse aplicado las disposiciones de las secciones 13.15 y 13.16 en cuanto a la espera y observación del intervenido por un periodo de tiempo de veinte (20) minutos, no será necesaria una espera de veinte (20) minutos adicionales para realizar la prueba final de aliento, a menos que la persona haya tomado bebidas alcohólicas o vomitado en el periodo de tiempo entre una prueba y la otra.

Ahora bien, en Pueblo v. Montalvo Petrovich, *supra*, pág. 259, nuestro Tribunal Supremo rechazó el disponer de una regla de exclusión automática ante cualquier incumplimiento con el procedimiento dispuesto por la regulación de pruebas de aliento. Pueblo v. Caraballo Borrero, *supra,* pág. 277. Allí, nuestro más alto foro local explicó que los tribunales deben determinar caso a caso la magnitud de la desviación y el impacto que ésta puede tener sobre la confiabilidad y precisión de la evidencia. Íd. Siendo ello así, será deber de estos foros el rechazarla si su

incumplimiento es de tal magnitud que derrota todo tipo de confiabilidad. Íd., págs. 277-278.

No obstante, los casos normativos de Pueblo v. Caraballo Borrero, *supra*, pág. 278 y Pueblo v. Montalvo Petrovich, *supra*, pág. 961, fueron enfáticos en que tal incumplimiento no impide que el Estado presente otra evidencia para intentar probar que el conductor se encontraba bajo los efectos de bebidas embriagantes y que el agente tenía motivos fundados para tal intervención. De manera que, se puede presentar en evidencia el dominio que el conductor tenía sobre sí mismo como, entre otras cosas, "la apariencia de sus ojos, el dominio del habla, el grado de control que ejerció sobre su vehículo hasta el momento del accidente, su estado anímico, así como cualquier otro factor que refleje el estado de sus facultades físicas y mentales." Pueblo v. Caraballo Borrero, *supra*, pág. 278.

### III.

El peticionario alega que el foro primario cometió los siguientes errores: (1) concluir que el Reglamento Núm. 9234 no exige un periodo de observación de veinte minutos para realizar la prueba con el Alco-Sensor y no suprimirla; (2) concluir que existían motivos fundados para detenerlo y someterlo a la prueba con el Intoxilyzer, y (3) no suprimir la prueba del Intoxilyzer por ser fruto del árbol ponzoñoso.

Al observar detenidamente el expediente del recurso de *certiorari,* junto al derecho aplicable, concluimos expedir el auto de *certiorari* a los fines revocar la determinación del foro primario que no suprimió como evidencia la prueba de Alco-Sensor. No obstante, ello no conlleva la supresión de la prueba del Intoxilyzer 9000, por no constituir fruto del árbol ponzoñoso, dado que la detención y los motivos fundados del agente para

creer que el peticionario conducía bajo los efectos del alcohol fue legal.

El caso ante nos, guarda estrecha similitud con la controversia planteada en Pueblo v. Caraballo Borrero, *supra.* Allí, el agente administró la prueba con el Alco-Sensor a solo cinco (5) minutos de la intervención con el conductor. De modo que, nuestro Tribunal Supremo razonó que "[e]n tan escaso periodo no hay certeza de que en la mucosa de la boca de este no habiten rastros de alcohol, en forma líquida o en forma de vapor, que provoquen resultados científicamente no confiables". Íd., pág. 279. A esos efectos, nuestro más alto foro local resolvió que procedía la supresión del Alco-Sensor, dado a que el resultado carecía de confiabilidad científica.

Claro está que, el Reglamento vigente para los hechos de Pueblo v. Caraballo Borrero, *supra,* no es igual al caso de autos. Véase, Reglamento Núm. 6346 de 17 de septiembre de 2001 (Reglamento del Secretario de Salud Núm. 110 de 14 de septiembre de 2001). No obstante, las disposiciones pertinentes a la controversia que nos ocupa no contradicen al hoy vigente, Reglamento Núm. 9234.[6]

---

[6] En lo particular, en Pueblo v. Caraballo Borrero, *supra,* pág. 276, resume las disposiciones pertinentes del Reglamento Núm. 7318:

> [E]l Reglamento Núm. 7318, *supra*, dispone que "antes de realizar una prueba con el Intoxilyzer, la persona intervenida se mantendrá bajo observación por un período mínimo de veinte (20) minutos, contados a partir de la hora de la intervención, para asegurarse de que no existe alcohol residual en su boca al momento de efectuarse el análisis", que pueda afectar la corrección de la prueba. Art. 8.14 del Reglamento Núm. 7318, *supra*, pág. 11. Este reglamento define "alcohol residual" como la "[c]antidad de alcohol que permanece en la mucosa de la boca por algún tiempo después de haberse ingerido alcohol, bien se encuentre en forma líquida o en forma de vapor". Art. 4.03 del Reglamento Núm. 7318, *supra*, pág. 2. Durante los 20 minutos de observación, el agente debe evitar que el individuo fume, ingiera alimentos o se provoque vómito. Si ello ocurre, deberá esperarse 20 minutos adicionales. Art. 8.15 del Reglamento Núm. 7318, *supra.* Estas normas aplican también a las pruebas preliminares de aliento realizadas con el Alco-Sensor. Art. 8.23 del Reglamento Núm. 7318, *supra.*

En el caso ante nos, se reconoció en la Vista de Supresión de Evidencia que la prueba de Alco-Sensor se hizo a los seis (6) minutos de la intervención.[7] Así pues, conforme al Reglamento Núm. 9234, al precedente de Pueblo v. Caraballo Borrero, *supra*, y la totalidad de los hechos del caso que nos ocupa, lo que razonablemente procede es la supresión del Alco-Sensor por carecer de confiabilidad científica. Sin embargo, ello no tiene el efecto de suprimir la prueba del Intoxilyzer 9000, bajo la teoría del fruto del árbol ponzoñoso. Explicamos.

Un agente del orden público puede derivar motivos fundados para intervenir con un conductor por su comportamiento y/o de signos externos de embriaguez, y requerirle que se realice una prueba de aliento con el Alco-Sensor o con el Intoxilyzer 9000. Ahora, surge de la Vista de Supresión de Evidencia que, el agente Barreto García detuvo al señor Rosario Méndez por conducir sin cinturón de seguridad.[8] No obstante, al acercarse a este, expelía un hedor a alcohol y tenía los ojos rojizos, por lo que le dio los motivos fundados para creer que el peticionario estaba conduciendo el vehículo bajo los efectos del alcohol y ordenarle a bajarse del vehículo.[9] Aunque el agente realizó la prueba del Alco-Sensor sin cumplir con los veinte (20) minutos reglamentarios; la prueba presentada demostró que, posteriormente el peticionario fue llevado al Cuartel de la Policía, donde se le realizó la prueba del Intoxilyzer 9000, observándose el periodo de veinte (20) minutos requeridos,[10] dando .123% de alcohol en su organismo. Con esa prueba, se confirmó los motivos fundados que

---

[7] Regrabación de la Vista de Supresión del 14 de octubre de 2025, Min. 14:52-20:50.
[8] Íd., Min. 4:39-5:20 de la Regrabación.
[9] Íd., Min. 7:02-9:53 de la Regrabación.
[10] Íd., Min. 10:00-11:20 de la Regrabación.

inicialmente percibió el agente para creer que el señor Rosario Méndez conducía en estado de embriaguez.

Ciertamente, la intervención del agente Barreto García no sería legal si antes de realizar la prueba de Alco-Sensor no hubiese tenido motivos fundados para creer que el individuo se encontraba bajo los efectos de bebidas embriagantes. A igual que ocurrió en Pueblo v. Caraballo Borrero, *supra,* pág. 282, los resultados de la prueba con el Alco-Sensor solo abonaron a los signos de embriaguez que percibió el agente mediante sus sentidos de que había ingerido bebidas alcohólicas.

De otra parte, no nos convence los argumentos del peticionario, en cuanto a que como este no condujo a exceso de velocidad y zigzagueando, así como que aun en muletas este se bajó y caminó solo hasta la patrulla sin caerse o tropezarse, demuestran que no hubo motivos fundados.

Más bien, no nos alberga dudas, que el hedor a alcohol y los ojos rojizos son motivos fundados suficientes para creer que el conductor se encuentra en un estado de embriaguez. Inclusive, en Pueblo v. Caraballo Borrero, *supra*, págs. 278, 281, nuestro Tribunal Supremo menciona tales signos como motivos fundados. **Por tanto, el arresto y traslado del peticionario al cuartel para efectuarle una prueba definitiva de aliento con el Intoxilyzer 9000 fue legal y razonable**. Reiteramos, y por propia admisión del peticionario que, la prueba de Intoxilyzer 9000 se hizo en el término requerido de veinte (20) minutos, por lo que, es admisible al cumplir con la reglamentación y con el criterio de confiabilidad.

## IV.

Por las razones que anteceden, expedimos el auto de *certiorari* con el fin de modificar la determinación del foro primario

que no suprimió como evidencia la prueba de Alco-Sensor.   En consecuencia, ordenamos la continuación de los procedimientos conforme a lo aquí resuelto.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones